**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | **Case No. 8:13-mj-03005-TMD** |
| **v.** | * | |
| | * | |
| | * | |
| **DAVID C. MUIR,** | * | |
| | * | |
| | * | |
| **Defendant** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

<u>**MEMORANDUM OPINION AND ORDER OF COURT**</u>

This matter is before the Court on Defendant's Motion to Suppress Search and Seizure. ECF Nos. 14, 15.  On July 10, 2014, a hearing was held at which United States Park Police ("USPP") Officer Charles Barner and Defendant testified.   The parties thereafter filed supplemental briefs.  ECF Nos. 16, 17.  For the reasons stated below, Defendant's Motion (ECF No. 14) is **DENIED**.

<u>**BACKGROUND**</u>

On August 17, 2013, at about midnight, Officer Barner was driving his fully marked USPP cruiser eastbound on the Suitland Parkway, west of the intersection with Naylor Road, an area within the special maritime and territorial jurisdiction of the United States.  At that location the Suitland Parkway consists of three lanes—two for through traffic and a right-turn lane to turn south onto Naylor Road.  While Officer Barner was in the right-turn lane, he observed a vehicle ahead of him in the left through lane travelling at a high rate of speed.  Officer Barner decided to make a traffic stop of that vehicle.  Before moving to the left to pursue that vehicle, Officer Barner activated his overhead lights and looked behind to make sure it was safe for him to move

to the left.  At that point he observed Defendant's vehicle approaching from the rear in the right through lane.  Defendant maintained his lane and speed as he passed Officer Barner's cruiser, coming to within one to one and a half feet of striking the front end of the police cruiser.  After Defendant passed the cruiser, Officer Barner pulled in behind Defendant.  Officer Barner intended to stop Defendant to inform him that it was unsafe to pass the officer as he did.

After pursuing Defendant's vehicle for about five minutes, Officer Barner ultimately stopped him in the District of Columbia and, after directing him to exit his vehicle, handcuffed and searched him.  Because Officer Barner detected an odor of alcohol from Defendant, the officer conducted a horizontal-gaze nystagmus test on Defendant.  As a result of Defendant's performance on the test, Officer Barner arrested him and placed him in the back of his cruiser.  Defendant's vehicle was impounded.

Officer Barner transported Defendant to the District 5 station, which took about seven to ten minutes, where Defendant's handcuffs were removed and, according to Defendant, he passed other field sobriety tests.  According to the officer, following a twenty-minute observation period in the processing area, he read to Defendant the following USPP Form 21C ("Form 21C") while they were seated at a desk:

### 36 CFR CHEMICAL TESTING NOTICE

There is probable cause to believe that you were operating or were in physical control of a motor vehicle while under the influence of alcohol and/or drugs to the degree that rendered you incapable of safe operation, in violation of 36 CFR 4.23. The regulation requires you to submit to one or more tests of your breath, blood, urine, and/or saliva at the direction of a law enforcement officer to determine the sample's alcohol and/or drug content.  Refusal to provide one or more samples of breath, blood, urine and/or saliva for testing is **PROHIBITED.**  Your consent is **NOT** required to obtain any sample, and a sample **MAY BE** taken without your permission.

If a sample cannot be obtained through the reasonable efforts of the police, you will be charged with refusal to submit to chemical testing, an offense that carries a

maximum penalty of imprisonment for six months, a fine of $5000.00, or both, and a special assessment fee of $10.00 and a processing fee of $25.00. Furthermore, evidence of refusal may be admissible in any related judicial proceeding.

Gov't Ex. 1.  Below these paragraphs on the form, a section titled "**PERSON RECEIVING NOTICE** (Check boxes that apply-if able/not handcuffed)" delineated three options: (1) "I Will Submit To Testing," (2) "I Refuse to Submit To Testing," and (3) "Sample Taken Without Consent or Permission."

According to Defendant, Officer Barner did not read the form to him.  Rather, the officer told him that it would be illegal not to take the test and that there would be ramifications for failing to do so.  In any event, Officer Barner gave the form to Defendant and instructed him to read it.   After Defendant complied, Officer Barner explained that he was testing only Defendant's breath, discussed the three boxes on the form, and directed him to check one of the boxes and sign the form with a pen provided to Defendant.

Defendant checked the box marked "I Will Submit To Testing," although at the hearing he did not recall doing so.  According to Officer Barner, he did not direct Defendant to check the box.  Defendant and Officer Barner then completed and signed the form.  After Officer Barner instructed Defendant on how to perform the breath test, he submitted to the breath test by blowing into a mouthpiece with a tube attached to an Intoximeter 5000.  As a result of the breath test, Defendant was charged with, among other offenses, driving under the influence of alcohol in violation of 36 C.F.R. § 4.23(a)(1) and (2).

## DISCUSSION

Defendant seeks to have the breath test in this case suppressed because the police failed to obtain a warrant prior to administering the test.  Def.'s Mem. Supp. Mot. Suppress 1-6, ECF No. 15.  Specifically, Defendant maintains that the warrantless breath test in this case does not

3

fall within any of the following recognized exceptions to the warrant requirement: exigent circumstances, consent, or search incident to arrest.  *Id.* at 2-6.

Title 36 C.F.R. § 4.23 provides:

(a)     Operating or being in actual physical control of a motor vehicle is prohibited while:

     (1)     Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or

     (2)     The alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath.  Provided however, that if State law that applies to operating a motor vehicle while under the influence of alcohol establishes more restrictive limits of alcohol concentration in the operator's blood or breath, those limits supersede the limits specified in this paragraph.

(b)     The provisions of paragraph (a) of this section also apply to an operator who is or has been legally entitled to use alcohol or another drug.

(c)     Tests.

     *(1)     At the request or direction of an authorized person who has probable cause to believe that an operator of a motor vehicle within a park area has violated a provision of paragraph (a) of this section, the operator shall submit to one or more tests of the blood, breath, saliva or urine for the purpose of determining blood alcohol and drug content.*

     *(2)     Refusal by an operator to submit to a test is prohibited and proof of refusal may be admissable [sic] in any related judicial proceeding.*

     (3)     Any test or tests for the presence of alcohol and drugs shall be determined by and administered at the direction of an authorized person.

     (4)     Any test shall be conducted by using accepted scientific methods and equipment of proven accuracy and reliability operated by personnel certified in its use.

(d)     Presumptive levels.

4

    (1)     The results of chemical or other quantitative tests are intended to supplement the elements of probable cause used as the basis for the arrest of an operator charged with a violation of paragraph (a)(1) of this section.  If the alcohol concentration in the operator's blood or breath at the time of testing is less than alcohol concentrations specified in paragraph (a)(2) of this section, this fact does not give rise to any presumption that the operator is or is not under the influence of alcohol.

    (2)     The provisions of paragraph (d)(1) of this section are not intended to limit the introduction of any other competent evidence bearing upon the question of whether the operator, at the time of the alleged violation, was under the influence of alcohol, or a drug, or drugs, or any combination thereof.

36 C.F.R. § 4.23 (emphasis added).  Section 4.23(c)(2) is a substantive offense.  *United States v. Francisco*, 413 F. App'x 216, 219 (11th Cir. 2011) (per curiam) (citing *United States v. Brown*, 364 F.3d 1266, 1268-69 (11th Cir. 2004)).  Indeed, a person can be charged under § 4.23(c)(2) with refusal and face a penalty of up to 6 months' incarceration and/or a fine of up to $5,000.00.  18 U.S.C. §§ 19, 3559(a)(7), 3571(b)(6); 36 C.F.R. § 1.3(a).

Title 18 U.S.C. § 3118 further provides:

**(a)  Consent.**--*Whoever operates a motor vehicle in the special maritime and territorial jurisdiction of the United States consents thereby to a chemical test or tests of such person's blood, breath, or urine, if arrested for any offense arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction.*  The test or tests shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving a motor vehicle upon the special maritime and territorial jurisdiction of the United States while under the influence of drugs or alcohol in violation of the laws of a State, territory, possession, or district.

**(b)  Effect of Refusal.**--*Whoever, having consented to a test or tests by reason of subsection (a), refuses to submit to such a test or tests, after having first been advised of the consequences of such a refusal, shall be denied the privilege of operating a motor vehicle upon the special maritime and territorial jurisdiction of the United States during the period of a year commencing on the date of arrest upon which such test or tests was refused*, and such refusal may be admitted into evidence in any case arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction.  Any

> person who operates a motor vehicle in the special maritime and territorial
> jurisdiction of the United States after having been denied such privilege under
> this subsection shall be treated for the purposes of any civil or criminal
> proceedings arising out of such operation as operating such vehicle without a
> license to do so.

18 U.S.C. § 3118 (emphasis added).

The Supreme Court in *Missouri v. McNeely*, 133 S. Ct. 1552, 1566 (2013) (plurality opinion), noted that implied-consent laws, which "require motorists, as a condition of operating a motor vehicle within the State, to consent to [blood alcohol concentration] testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense," are legal tools that states have to enforce their drunk-driving laws. "By using this 'legal tool' and revoking a driver's license for refusing a test, [the Government] is . . . conditioning the privilege of driving on agreeing to a warrantless search." *State v. Brooks*, 838 N.W.2d 563, 572 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). Thus, "[i]t is clear that an individual may be compelled to take a chemical test so long as there are reasonable grounds to believe that the person was driving a motor vehicle while under the influence of alcohol or drugs." *United States v. Sauls*, 981 F. Supp. 909, 913 (D. Md. 1997).

Defendant maintains that, in light of *McNeely*, Officer Barner was required to obtain a warrant prior to administering the breath test. However,

> *McNeely* addressed the narrow question of whether the dissipation of alcohol in
> the bloodstream establishes a *per se* exigent-circumstances exception to the
> warrant requirement for nonconsensual blood draws for [DUI] arrests. *McNeely*
> did not address other potential exceptions to the warrant requirement, the Fourth
> Amendment implications of breath tests, the validity of implied consent statutes,
> or the validity of breath tests conducted pursuant to such statutes.

*State v. Won*, __ P.3d __, No. CAAP-12-0000858, 2014 WL 1270615, at *18 (Haw. Ct. App. May 2, 2014), *cert. granted*, No. SCWC-12-0000858, 2014 WL 2881259 (Haw. June 24, 2014).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.  The Supreme Court has recognized that

> [v]irtually any "intrusio[n] into the human body," *Schmerber v. California*, 384 U.S. 757, 770, 86 S. Ct. 1826, 16 L.Ed.2d 908 (1966), will work an invasion of "'cherished personal security' that is subject to constitutional scrutiny," *Cupp v. Murphy*, 412 U.S. 291, 295, 93 S. Ct. 2000, 36 L.Ed.2d 900 (1973) (quoting *Terry v. Ohio*, 392 U.S. 1, 24-25, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968)).

*Maryland v. King*, 133 S. Ct. 1958, 1969 (2013) (alteration in original).  The Fourth Amendment has been applied in cases involving police efforts to scrape an arrestee's fingernails to obtain trace evidence, *see Murphy*, *supra*, to draw blood, *see McNeely*, *supra*; *Schmerber*, *supra*, and to use a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples.  *See King*, *supra*.  Most important for the purposes of this case, the Supreme Court has held that the Fourth Amendment applies to a breathalyzer test.  *King*, 133 S. Ct. at 1969 (citing *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616, 109 S. Ct. 1402, 1413 (1989)).  However, "[u]nlike blood tests, breath tests do not require piercing the skin and may be conducted safely outside a hospital environment and with a minimum of inconvenience or embarrassment.  Further, breath tests reveal the level of alcohol in the . . . bloodstream and nothing more."  *Skinner*, 489 U.S. at 625, 109 S. Ct. at 1418.  "[B]reath tests reveal no other facts in which [one] has a substantial privacy interest."  *Id.* at 626, 109 S. Ct. at 1418.

Thus, "[t]o say that the Fourth Amendment applies here is the beginning point, not the end of the analysis."  *King*, 133 S. Ct. at 1969.  "The Fourth Amendment does not prohibit all searches, only those that are unreasonable."  *United States v. Davis*, 690 F.3d 226, 241 (4th Cir. 2012), *cert. denied*, 134 S. Ct. 52 (2013).  The ultimate measure of the constitutionality of a governmental search is "reasonableness."  *King*, 133 S. Ct. at 1969.  "The fact than an intrusion

is negligible is of central relevance to determining reasonableness, although it is still a search as

the law defines that term." *Id.* The Fourth Amendment's proper function is not to constrain all

intrusions, but only intrusions that are unjustified or made in an improper manner. *Id.*

> In some circumstances, such as "[w]hen faced with special law enforcement
> needs, diminished expectations of privacy, minimal intrusions, or the like, the
> Court has found that certain general, or individual, circumstances may render a
> warrantless search or seizure reasonable." Those circumstances diminish the need
> for a warrant, either because "the public interest is such that neither a warrant nor
> probable cause is required," or because an individual is already on notice, for
> instance because of his employment, or the conditions of his release from
> government custody, that some reasonable police intrusion on his privacy is to be
> expected.

*Id.* (alteration in original) (citations omitted).

To determine the constitutionality of a particular search, the Court "must balance the

nature and quality of the intrusion on the individual's Fourth Amendment interests against the

importance of the governmental interests alleged to justify the intrusion." *United States v. Place*,

462 U.S. 696, 703, 103 S. Ct. 2637, 2642 (1983). The issue presented in this case was addressed

recently by the Intermediate Court of Appeals of Hawai'i. In balancing the intrusion of the

Fourth Amendment interests of a person arrested for DUI against the governmental interest in

deterring drunk drivers, the court explained that

> [t]he governmental interest in protecting lives, securing the safety of our public
> roads, and deterring drivers from operating vehicles while intoxicated is strong
> and compelling. On the other hand, the intrusion on personal privacy effected by
> a breath-test search under the statutory scheme is quite limited. Only a driver
> arrested on probable cause of [DUI], who already has a diminished expectation of
> privacy because he or she is in custody, *see King*, 133 S. Ct. at 1978, is subject to
> a breath test. Such a driver's objective expectation of privacy is further
> diminished by the implied consent to breath testing imposed by statute, which
> gives a driver statutory notice that if arrested for [DUI], "some reasonable police
> intrusion on his [or her] privacy is to be expected." *Id.* at 1969. The breath test
> itself is minimally intrusive. *See Skinner*, 489 U.S. at 625, 109 S. Ct. 1402.
> Unlike more intrusive blood tests, breath tests do not require piercing the skin, are
> safely conducted outside the hospital environment, and involve a minimum of
> inconvenience or embarrassment. *Id.* They only reveal very limited and targeted

information-the level of alcohol in a driver's system.  *Id.*  Moreover, the breath
tests are based on the driver's implied consent to testing that is given in exchange
for the privilege of driving . . . .  [T]he purpose of the implied consent statute
would be defeated if a driver could freely withdraw his or her consent to submit to
a breath test after being arrested for [DUI].

*Won*, 2014 WL 1270615, at *21 (alteration in original) (footnote omitted); *see Stevens v.*
*Comm'r of Pub. Safety*, 850 N.W.2d 717, 727-28 (Minn. Ct. App. 2014) (concluding that
Minnesota's implied-consent statute satisfies Fourth Amendment's general reasonableness
requirement and that licensed driver in Minnesota has diminished expectation of privacy with
respect to enforcement of state's DWI laws).

Similarly, under the statutory scheme applicable in this case, the Court finds that the
governmental interest in combatting the danger to public safety caused by drunk driving
outweighs the minimal intrusion on personal privacy effected by the breath test.  The breath test
administered in this case was, therefore, reasonable under the Fourth Amendment, and the police
were not required to obtain a warrant.  As such, the Government is not required to establish an
exception to the warrant requirement.

The analysis does not end here, however.  "Even if a warrant is not required, a search is
not beyond Fourth Amendment scrutiny; for it must be reasonable in its scope and manner of
execution.  Urgent government interests are not a license for indiscriminate police behavior."
*King*, 133 S. Ct. at 1970.  Unlike most searches, a breath test requires the cooperation of the
subject in order to administer the test and accomplish its purpose.  Blood tests, fingernail
scrapings, and buccal swabs of a subject's mouth can be effected whether or not the subject
cooperates.  On the other hand, a breath test cannot be administered unless the subject cooperates
by producing a sufficient breath sample.

Defendant argues that the manner in which the breath test was administered was unduly coercive. According to Defendant, who relies on *State v. Butler*, 302 P.3d 609 (Ariz. 2013), "[t]he problem is that consent to take a breath test is not voluntary[;] it is coerced when the officer informs the suspect that taking the test is mandatory, and refusal a criminal act under 36 CFR § 4.23." Def.'s Mem. Supp. Mot. Suppress 3, ECF No. 15. "In light of the statutorily required coercion that occurs, consent cannot be considered to be voluntary and in compliance with the Fourth Amendment." *Id.* at 4.

In *Butler*, the Supreme Court of Arizona held that a compelled blood draw, even when administered pursuant to Arizona's implied-consent statute, is a search subject to the Fourth Amendment's constraints. *Butler*, 302 P.3d at 612 (citing *McNeely*, 133 S. Ct. at 1556). Accordingly, the Fourth Amendment requires an arrestee's consent to be voluntary to justify a warrantless blood draw. *Id.* The court in *Butler* considered the totality of the circumstances in that case, including the suspect's age and intelligence and the length of detention, before affirming the lower court's determination that the defendant's consent was involuntary. *Id.* at 613-14;[1] *cf. Brooks*, 838 N.W.2d at 572-73 (holding that defendant consented under totality of circumstances, notwithstanding Minnesota's implied-consent statute). *Butler* does not hold, however, that Arizona's implied-consent statute is *per se* unduly coercive. *See Bales v. Dupnik*, No. CV 12-00483-TUC-BPV, 2014 WL 1794277, at *8 (D. Ariz. May 6, 2014) ("Petitioner points to no clearly established Supreme Court precedent which holds that the threat exerted by

---

[1] The court noted that it had previously held, in a case preceding *McNeely*, that the "consent" in Arizona's implied-consent statute does not always authorize warrantless testing of arrestees. *Butler*, 302 P.3d at 613 (citing *Carrillo v. Houser*, 232 P.3d 1245, 1247 (Ariz. 2010)). "Rather, the officer is directed to ask the arrestee to submit to the test, and the arrestee may then refuse by declining to expressly agree to take the test." *Id.* (citing Ariz. Rev. Stat. § 28-1321(B); *Carrillo*, 232 P.3d at 1247). "If the arrestee refuses, the statute specifies that a warrant is required to administer the test and the arrestee shall have his license suspended." *Id.* (citing Ariz. Rev. Stat. § 28-1321(D); *Carrillo*, 232 P.3d at 1247).

Arizona's or any other state's, implied consent law is *per se* unduly coercive."). Moreover, *Butler* involved a blood test, which may not be conducted without a warrant absent a defendant's consent, unless exigent circumstances are established. *See McNeely*, *supra*. As this Court has found, a breath test is a reasonable search, for which a warrant is not required. Defendant's reliance on *Butler* thus is unavailing.

Further, the fact that Defendant was advised that refusal to provide a breath sample was prohibited, that a sample may be taken without his permission, and that he would be charged with a criminal offense if he refused to give a sample, does not render the manner in which the sample was obtained coercive. Form 21C, which was read to Defendant and which he himself read before signing, accurately stated the provisions of the implied-consent law. Indeed, Defendant testified that Officer Barner informed him that refusing to submit to a chemical test was illegal with concomitant ramifications. "[A] driver's decision to agree to take a test is not coerced simply because [the Government] has attached the penalty of making it a crime to refuse the test." *Brooks*, 838 N.W.2d at 570. Rather, the imposition of criminal penalties for refusing to submit to a constitutionally reasonable police search, namely, a chemical test of breath supported by probable cause, is a reasonable means to facilitate a permissible state objective. *State v. Bernard*, 844 N.W.2d 41, 45 (Minn. Ct. App. 2014), *review granted* (Minn. May 20, 2014). Although refusing the test comes with criminal penalties, "the Supreme Court has made clear that while the choice to submit or refuse to take a chemical test 'will not be an easy or pleasant one for a suspect to make,' the criminal process 'often requires suspects and defendants to make difficult choices.'" *Brooks*, 838 N.W.2d at 571 (quoting *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S. Ct. 916, 923 (1983)); *see Johnson v. State*, 450 N.E.2d 123, 125 (Ind. Ct.

App. 1983) (driver's "[k]nowledge of a possible penalty for refusal to submit to [a breath] test is not so inherently coercive as to negate his consent"). In fact,

> it is difficult to see why the disclosure of accurate information about a particular penalty that may be imposed—if it is permissible for the [Government] to impose that penalty—could be unconstitutionally coercive. Rather, advising a defendant of the lawful consequences that may flow from his or her decision to engage in a certain behavior ensures that that defendant makes an informed choice whether to engage in that behavior or not. Indeed, the failure to disclose accurate information regarding the potential legal consequences of certain behavior would seem to be a more logical basis for a defendant to assert that his or her decision to engage in that behavior was coerced and involuntary. Of course, accurately advising a defendant of a lawful penalty that could be imposed may well play a role in the defendant's decision to engage in the particular behavior, but that does not mean that the defendant's decision was "involuntary."

*State v. Moore*, 318 P.3d 1133, 1138 (Or. 2013) (concluding that defendant expressly and voluntarily consented when officer asked defendant to submit to blood and urine tests and that defendant was not coerced by statement of rights and consequences that officer read to him before seeking consent), *modified per curiam*, 322 P.3d 486 (Or. 2014); *see State v. Nickerson*, 973 P.2d 758, 761-62 (Idaho Ct. App. 1999) (concluding that defendant, who was on parole and thus could not refuse breath test without risk of returning to prison, had impliedly consented as a matter of law to breath test under implied-consent statute; "the question of [the defendant's] consent at the police station, whether voluntary or involuntary, is superfluous, for actual consent at that point is unnecessary to the lawfulness of the procedure or the admissibility of the test results").

Furthermore,

> [b]ecause the officer indisputably had probable cause to believe that [Defendant] was driving while impaired . . . , the officer also indisputably had the option to obtain a test of [Defendant's] blood by search warrant. So at the time the officer asked [Defendant] whether he would submit to a breath test, the officer could have just as lawfully asked an independent jurist to issue a search warrant to test [Defendant's] blood. In other words, the officer had a lawful option to require [Defendant] to submit to a chemical test, based on a search warrant, and he

> instead gave [Defendant] the choice to voluntarily submit to warrantless testing. That the officer chose one approach . . . rather than another . . . does not make penalizing [Defendant's] decision unconstitutional because the consequent testing under either approach would have been constitutionally reasonable.

*Bernard*, 844 N.W.2d at 45-46 (citations omitted); *see City of Dodge City v. Webb*, 329 P.3d 515, 520-23 (Kan. Ct. App. 2014) (where probable cause supported law enforcement's threat to obtain warrant to secure sample of driver's blood after driver refused to submit to breathalyzer test, driver's subsequent consent to submit to breathalyzer test was not unlawfully coerced); *Humphries v. State*, 759 S.E.2d 611, 613-14 (Ga. Ct. App. 2014) (concluding that police officer's statements to defendant that chemical tests were "not optional" under state's implied-consent law were not coercive so as to require suppression of breath test results because none of officer's statements to defendant, including that police would obtain warrant to retrieve defendant's blood if defendant refused to consent to breath test, was deceptively misleading or inaccurate); *State v. LeClercq*, 243 P.3d 1093, 1099 (Idaho Ct. App. 2010) (holding that officer's statement informing driver of intention to obtain blood draw if driver refused breath test did not render driver's implied consent involuntary; "[w]here an officer informs a suspect that the officer intends to do something that the officer is legally authorized to do under the circumstances, such conduct does not amount to coercion").

Accordingly, even if Defendant could establish that his consent to take the breath test was obtained as a result of undue coercion, he cannot establish actual harm. The logical extension of Defendant's argument is that, but for the coercion, he would not have consented to the breath test. If Defendant did not consent, however, Officer Barner simply would have obtained a

13

warrant for a blood test pursuant to established protocol.[2]  Either way, the Government would obtain evidence of Defendant's level of intoxication.

Defendant also maintains that laws criminalizing refusals to consent to warrantless searches are unconstitutional, citing *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 540, 87 S. Ct. 1727, 1736-37 (1967).  *Camara* involved a property owner facing criminal charges for refusing to allow an inspection of his property.  There, the Court held that administrative searches of private dwellings intrude upon the interests protected by the Fourth Amendment and, therefore, require a warrant.  *Camara*, 387 U.S. at 534, 87 S. Ct. at 1733; *see Cowart v. Enrique*, 311 F. App'x 210, 213 (11th Cir. 2009) (per curiam).  The property owner in *Camara* had the right to insist on a warrant because there was no probable cause to believe that the property owner had violated any law and because there were no exigent circumstances preventing the government from obtaining a warrant.  *Camara*, 387 U.S. at 539, 87 S. Ct. at 1736.  Defendant did not have such a right, as there was probable cause to believe that he had been driving under the influence of alcohol and he already had been arrested on that charge.  *See Hoover v. Ohio*, 549 F. App'x 355, 356-57 (6th Cir. 2013) (per curiam) (dismissing habeas corpus petitioner's reliance on *Camara* in arguing that he may not be constitutionally convicted for refusing to consent to warrantless breathalyzer test).  Defendant's reliance on *Camara* accordingly is unavailing.

For these reasons, the Court finds that the statutory and regulatory scheme that imposes criminal sanctions to dissuade a driver from withdrawing his consent is reasonable and does not

---

[2] Following *McNeely*, the District of Maryland established a protocol for the USPP to obtain from a magistrate judge a telephonic warrant for a blood draw pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3).

violate the Fourth Amendment.  Because the warrantless breath test in this case did not violate the Fourth Amendment, the Court denies Defendant's Motion to Suppress.

## <u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion to Suppress Search and Seizure (ECF No. 14) is **DENIED**.


Date: August 28, 2014                                        _____/s/_____
                                                                     Thomas M. DiGirolamo
                                                                     United States Magistrate Judge