_____ FILED        _____ ENTERED
_____ LOGGED       _____ RECEIVED

MAY 0 7 2015

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                                              DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | Case No. 8:13-mj-03005-TMD |
| v. | * | |
| | * | |
| | * | |
| DAVID C. MUIR, | * | |
| | * | |
| | * | |
| Defendant | * | |

************

### AMENDED MEMORANDUM OPINION AND ORDER OF COURT

Following the parties' supplemental briefing after a hearing on Defendant's Motion to Suppress Search and Seizure (the "Motion") (ECF No. 14), the Court issued a memorandum opinion and order denying the Motion. *United States v. Muir*, No. 8:13-MJ-03005-TMD, 2014 WL 4258701 (D. Md. Aug. 28, 2014). After further consideration, the Court issues this amended memorandum opinion and order superseding *Muir*, 2014 WL 4258701, but again **denying** the Motion (ECF No. 14), for the reasons stated below.

### BACKGROUND

On August 17, 2013, at about midnight, Officer Charles Barner of the United States Park Police ("USPP") was driving his fully marked USPP cruiser eastbound on Suitland Parkway, west of the intersection with Naylor Road, an area within the special maritime and territorial jurisdiction of the United States. At that location Suitland Parkway consists of three lanes—two for through traffic and a right-turn lane to turn south onto Naylor Road. While Officer Barner was in the right-turn lane, he observed a vehicle ahead of him in the left through lane travelling at a high rate of speed. Officer Barner decided to make a traffic stop of that vehicle. Before

moving to the left to pursue that vehicle, Officer Barner activated his overhead lights and looked behind to make sure it was safe for him to move to the left.   At that point he observed Defendant's vehicle approaching from the rear in the right through lane.   Defendant maintained his lane and speed as he passed Officer Barner's cruiser, coming to within one to one and a half feet of striking the front end of the police cruiser.  After Defendant passed the cruiser, Officer Barner pulled in behind Defendant.   Officer Barner intended to stop Defendant to inform him that it was unsafe to pass the officer as he did.

After pursuing Defendant's vehicle for about five minutes, Officer Barner ultimately stopped him in the District of Columbia.   Officer Barner approached Defendant's vehicle and ordered Defendant to exit the vehicle.   Officer Barner placed Defendant in handcuffs, believing Defendant was a flight risk.   Because Officer Barner detected an odor of alcohol from Defendant, the officer conducted a horizontal-gaze nystagmus test on Defendant.  As a result of Defendant's performance on the test and the officer's other observations, Officer Barner arrested him and placed him in the back of his cruiser.  Defendant's vehicle was impounded.

Officer Barner transported Defendant to the District 5 station, which took about seven to ten minutes, where Defendant's handcuffs were removed.   At the station, Officer Barner attempted to administer additional field sobriety tests.  According to Defendant, he passed those field sobriety tests.   Following a twenty-minute observation period in the processing area, Officer Barner read to Defendant the following USPP Form 21C ("Form 21C") while they were seated at a desk:

### 36 CFR CHEMICAL TESTING NOTICE

There is probable cause to believe that you were operating or were in physical control of a motor vehicle while under the influence of alcohol and/or drugs to the degree that rendered you incapable of safe operation, in violation of 36 CFR 4.23. The regulation requires you to submit to one or more tests of your breath, blood,

2

urine, and/or saliva at the direction of a law enforcement officer to determine the sample's alcohol and/or drug content. Refusal to provide one or more samples of breath, blood, urine and/or saliva for testing is **PROHIBITED.** Your consent is **NOT** required to obtain any sample, and a sample **MAY BE** taken without your permission.

If a sample cannot be obtained through the reasonable efforts of the police, you will be charged with refusal to submit to chemical testing, an offense that carries a maximum penalty of imprisonment for six months, a fine of $5000.00, or both, and a special assessment fee of $10.00 and a processing fee of $25.00. Furthermore, evidence of refusal may be admissible in any related judicial proceeding.

Gov't Ex. 1. Below these paragraphs on the form, a section titled "**PERSON RECEIVING NOTICE** (Check boxes that apply-if able/not handcuffed)" delineated three options: (1) "I Will Submit To Testing," (2) "I Refuse to Submit To Testing," and (3) "Sample Taken Without Consent or Permission."

According to Defendant, Officer Barner did not read the form to him. Rather, the officer told him that it would be illegal not to take the test and that there would be ramifications for failing to do so. In any event, Officer Barner gave the form to Defendant and instructed him to read it. After Defendant complied, Officer Barner explained that he was testing only Defendant's breath, discussed the three boxes on the form, and directed him to check one of the boxes and sign the form with a pen provided to Defendant.

Defendant checked the box marked "I Will Submit To Testing," although at the hearing he did not recall doing so. According to Officer Barner, he did not direct Defendant to check the box. Defendant and Officer Barner then completed and signed the form. After Officer Barner instructed Defendant on how to perform the breath test, he submitted to the breath test by blowing into a mouthpiece with a tube attached to an Intoximeter 5000. As a result of the breath test, Defendant was charged with, among other offenses, driving under the influence of alcohol

3

in violation of 36 C.F.R. § 4.23(a)(1) and (2).  It is undisputed that Officer Barner did not attempt to obtain a warrant before administering the breath test.

## DISCUSSION

Defendant seeks to have the breath test in this case suppressed because the police did not obtain a warrant before administering the test.  Def.'s Mem. Supp. Mot. Suppress 1-6, ECF No. 15.  Specifically, Defendant maintains that the warrantless breath test in this case does not fall within any of the following recognized exceptions to the warrant requirement: exigent circumstances, consent, or search incident to arrest.  *Id.* at 2-6.  Therefore, relying on the Supreme Court's decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), Defendant argues that Officer Barner was required to obtain a warrant before administering the breath test.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  Thus, "[t]he Fourth Amendment prohibits only *unreasonable* searches."  *Grady v. North Carolina*, 135 S. Ct. 1368, 1371 (2015) (per curiam).  With limited exceptions, warrantless searches are presumptively unreasonable.  *United States v. Karo*, 468 U.S. 705, 717, 104 S. Ct. 3296, 3304 (1984).  Exceptions to the Fourth Amendment's warrant requirement include consent, *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 2045 (1973), search incident to a lawful arrest, *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009), and exigent circumstances, *Mincey v. Arizona*, 437 U.S. 385, 393-94, 98 S. Ct. 2408, 2414 (1978).

The Supreme Court has recognized that

> [v]irtually any "intrusio[n] into the human body," *Schmerber v. California*, 384 U.S. 757, 770, 86 S. Ct. 1826, 16 L.Ed.2d 908 (1966), will work an invasion of "'cherished personal security' that is subject to constitutional scrutiny," *Cupp v.*

*Murphy*, 412 U.S. 291, 295, 93 S. Ct. 2000, 36 L.Ed.2d 900 (1973) (quoting *Terry v. Ohio*, 392 U.S. 1, 24-25, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968)).

*Maryland v. King*, 133 S. Ct. 1958, 1969 (2013) (alteration in original). The Fourth Amendment has been applied in cases involving police efforts to scrape an arrestee's fingernails to obtain trace evidence, *see Murphy, supra*, to draw blood, *see McNeely, supra*; *Schmerber, supra*, and to use a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples. *See King, supra*. The Fourth Amendment further applies to a breathalyzer test. *King*, 133 S. Ct. at 1969 (citing *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616, 109 S. Ct. 1402, 1413 (1989)). Thus, a warrant would presumptively be required before a breath test could be administered, unless an exception to the warrant requirement applies.

To determine the constitutionality of a particular search, the Court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703, 103 S. Ct. 2637, 2642 (1983). "The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." *Grady*, 135 S. Ct. at 1371.

The issue presented in this case was addressed recently by the Intermediate Court of Appeals of Hawai'i. *State v. Yong Shik Won*, 332 P.3d 661 (Haw. Ct. App. 2014), *cert. granted*, No. SCWC-12-0000858, 2014 WL 2881259 (Haw. June 24, 2014). In balancing the intrusion of the Fourth Amendment interests of a person arrested for DUI against the governmental interest in deterring drunk drivers, the court explained that

> [t]he governmental interest in protecting lives, securing the safety of our public roads, and deterring drivers from operating vehicles while intoxicated is strong and compelling. On the other hand, the intrusion on personal privacy effected by a breath-test search under the statutory scheme is quite limited. Only a driver arrested on probable cause of [DUI], who already has a diminished expectation of

privacy because he or she is in custody, *see King*, 133 S. Ct. at 1978, is subject to a breath test.   Such a driver's objective expectation of privacy is further diminished by the implied consent to breath testing imposed by statute, which gives a driver statutory notice that if arrested for [DUI], "some reasonable police intrusion on his [or her] privacy is to be expected." *Id.* at 1969.   The breath test itself is minimally intrusive.  *See Skinner*, 489 U.S. at 625, 109 S. Ct. 1402. Unlike more intrusive blood tests, breath tests do not require piercing the skin, are safely conducted outside the hospital environment, and involve a minimum of inconvenience or embarrassment.  *Id.*   They only reveal very limited and targeted information-the level of alcohol in a driver's system.  *Id.*   Moreover, the breath tests are based on the driver's implied consent to testing that is given in exchange for the privilege of driving . . . .  [T]he purpose of the implied consent statute would be defeated if a driver could freely withdraw his or her consent to submit to a breath test after being arrested for [DUI].

*Id.* at 681 (alteration in original) (footnote omitted); *see Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 727-28 (Minn. Ct. App. 2014) (concluding that Minnesota's implied-consent statute satisfies Fourth Amendment's general reasonableness requirement and that licensed driver in Minnesota has diminished expectation of privacy with respect to enforcement of state's DWI laws).

The Government asserts, among other things, that the warrantless breath test in this case should not be suppressed because Defendant expressly consented to the breath test before it was administered.   Gov't's Resp. 3-4, ECF No. 16.   Defendant maintains, however, that the warrantless breath test does not fall within any recognized exception to the Fourth Amendment. Def.'s Mem. Supp. Mot. Suppress 1, ECF No. 15.   As to the consent exception, Defendant argues that any express consent he gave before the administration of the breath test was coerced and thus did not constitute the voluntary and knowing consent necessary for the application of the consent exception.   *Id.* at 3-4; *see Bustamonte*, 412 U.S. at 227, 93 S. Ct. at 2047-48 (voluntariness of consent to search is question of fact to be determined from totality of circumstances); *Bumper v. North Carolina*, 391 U.S. 543, 548-50, 88 S. Ct. 1788, 1792 (1968) (government has burden to prove that consent was freely and voluntarily given and not coerced).

The provisions of 36 C.F.R. § 4.23 and 18 U.S.C. § 3118 apply to this case.  Title 36

C.F.R. § 4.23 provides:

(a)    Operating or being in actual physical control of a motor vehicle is prohibited while:

    (1)    Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or

    (2)    The alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath.  Provided however, that if State law that applies to operating a motor vehicle while under the influence of alcohol establishes more restrictive limits of alcohol concentration in the operator's blood or breath, those limits supersede the limits specified in this paragraph.

(b)    The provisions of paragraph (a) of this section also apply to an operator who is or has been legally entitled to use alcohol or another drug.

(c)    Tests.

    *(1)    At the request or direction of an authorized person who has probable cause to believe that an operator of a motor vehicle within a park area has violated a provision of paragraph (a) of this section, the operator shall submit to one or more tests of the blood, breath, saliva or urine for the purpose of determining blood alcohol and drug content.*

    *(2)    Refusal by an operator to submit to a test is prohibited and proof of refusal may be admissable [sic] in any related judicial proceeding.*

    (3)    Any test or tests for the presence of alcohol and drugs shall be determined by and administered at the direction of an authorized person.

    (4)    Any test shall be conducted by using accepted scientific methods and equipment of proven accuracy and reliability operated by personnel certified in its use.

(d)    Presumptive levels.

(1)     The results of chemical or other quantitative tests are intended to supplement the elements of probable cause used as the basis for the arrest of an operator charged with a violation of paragraph (a)(1) of this section.  If the alcohol concentration in the operator's blood or breath at the time of testing is less than alcohol concentrations specified in paragraph (a)(2) of this section, this fact does not give rise to any presumption that the operator is or is not under the influence of alcohol.

(2)     The provisions of paragraph (d)(1) of this section are not intended to limit the introduction of any other competent evidence bearing upon the question of whether the operator, at the time of the alleged violation, was under the influence of alcohol, or a drug, or drugs, or any combination thereof.

36 C.F.R. § 4.23 (emphasis added).  Section 4.23(c)(2) is a substantive offense.  *United States v.*

*Francisco*, 413 F. App'x 216, 219 (11th Cir. 2011) (per curiam) (citing *United States v. Brown*,

364 F.3d 1266, 1268-69 (11th Cir. 2004)).  Indeed, a person can be charged under § 4.23(c)(2)

with refusal and face a penalty of up to 6 months' incarceration and/or a fine of up to $5,000.00.

18 U.S.C. §§ 19, 3559(a)(7), 3571(b)(6); 36 C.F.R. § 1.3(a).

Title 18 U.S.C. § 3118 provides:

(a)  **Consent.**--*Whoever operates a motor vehicle in the special maritime and territorial jurisdiction of the United States consents thereby to a chemical test or tests of such person's blood, breath, or urine, if arrested for any offense arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction.*  The test or tests shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving a motor vehicle upon the special maritime and territorial jurisdiction of the United States while under the influence of drugs or alcohol in violation of the laws of a State, territory, possession, or district.

(b)  **Effect of Refusal.**--*Whoever, having consented to a test or tests by reason of subsection (a), refuses to submit to such a test or tests, after having first been advised of the consequences of such a refusal, shall be denied the privilege of operating a motor vehicle upon the special maritime and territorial jurisdiction of the United States during the period of a year commencing on the date of arrest upon which such test or tests was refused*, and such refusal may be admitted into evidence in any case arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction.  Any person who operates a motor vehicle in the special maritime and territorial

8

> jurisdiction of the United States after having been denied such privilege under this subsection shall be treated for the purposes of any civil or criminal proceedings arising out of such operation as operating such vehicle without a license to do so.

18 U.S.C. § 3118 (emphasis added).

The Court now addresses Defendant's argument that any express consent he gave for the breath test was coerced. Specifically, Defendant maintains that the fact that he would be subject to criminal liability if he refused to consent to the breath test renders any express consent he gave invalid as the subject of coercion. Def.'s Mem. Supp. Mot. Suppress 3-4, ECF No. 15. The Court disagrees.

The Court notes at the outset that Defendant's reliance on *McNeely* is misplaced. In *McNeely*, the Supreme Court held that the natural metabolization of alcohol in the bloodstream does not present a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases. *McNeely*, 133 S. Ct. at 1556. Rather, the Court agrees with the assessment of the Intermediate Court of Appeals of Hawai'i that

> *McNeely* addressed the narrow question of whether the dissipation of alcohol in the bloodstream establishes a *per se* exigent-circumstances exception to the warrant requirement for nonconsensual blood draws for [DUI] arrests. *McNeely* did not address other potential exceptions to the warrant requirement, the Fourth Amendment implications of breath tests, the validity of implied consent statutes, or the validity of breath tests conducted pursuant to such statutes.

*Won*, 332 P.3d at 679.

The fact that Defendant was advised that refusal to provide a breath sample was prohibited, that a sample may be taken without his permission, and that he would be charged with a criminal offense if he refused to give a sample, does not render the manner in which the sample was obtained coercive. Form 21C, which was read to Defendant and which he himself

9

read before signing, accurately stated the provisions of the implied-consent law.   Indeed,

Defendant testified that Officer Barner informed him that refusing to submit to a chemical test

was illegal with concomitant ramifications.   "[A] driver's decision to agree to take a test is not

coerced simply because [the Government] has attached the penalty of making it a crime to refuse

the test."   *State v. Brooks*, 838 N.W.2d 563, 570 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799

(2014).   Rather, the imposition of criminal penalties for refusing to submit to a constitutionally

reasonable police search, namely, a chemical test of breath supported by probable cause, is a

reasonable means to facilitate a permissible state objective.   *State v. Bernard*, 844 N.W.2d 41, 45

(Minn. Ct. App. 2014), *aff'd*, 859 N.W.2d 762 (Minn. 2015).   Although refusing the test comes

with criminal penalties, "the Supreme Court has made clear that while the choice to submit or

refuse to take a chemical test 'will not be an easy or pleasant one for a suspect to make,' the

criminal process 'often requires suspects and defendants to make difficult choices.'"   *Brooks*,

838 N.W.2d at 571 (quoting *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S. Ct. 916, 923

(1983)); *accord Beylund v. Levi*, 859 N.W.2d 403, 408-09 (N.D. 2015); *State v. Smith*, 849

N.W.2d 599, 604-07 (N.D. 2014) (holding that giving of North Dakota's implied-consent

advisory informing arrestee that refusing chemical test is a crime does not render consent to test

involuntary (citing *Brooks*, 838 N.W.2d at 570-72)).   In fact,

> it is difficult to see why the disclosure of accurate information about a particular
> penalty that may be imposed—if it is permissible for the [Government] to impose
> that penalty—could be unconstitutionally coercive.   Rather, advising a defendant
> of the lawful consequences that may flow from his or her decision to engage in a
> certain behavior ensures that that defendant makes an informed choice whether to
> engage in that behavior or not.   Indeed, the *failure* to disclose accurate
> information regarding the potential legal consequences of certain behavior would
> seem to be a more logical basis for a defendant to assert that his or her decision to
> engage in that behavior was coerced and involuntary.   Of course, accurately
> advising a defendant of a lawful penalty that could be imposed may well play a
> role in the defendant's decision to engage in the particular behavior, but that does
> not mean that the defendant's decision was "involuntary."

*State v. Moore*, 318 P.3d 1133, 1138 (Or. 2013) (concluding that defendant expressly and voluntarily consented when officer asked defendant to submit to blood and urine tests and that defendant was not coerced by statement of rights and consequences that officer read to him before seeking consent), *modified per curiam*, 322 P.3d 486 (Or. 2014); *see People v. Harris*, 184 Cal. Rptr. 3d 198, 213 (Ct. App. 2015) (holding that forcing motorist "to choose between submitting to the chemical test and facing serious consequences for refusing to submit, pursuant to the implied consent law, does not in itself render the motorist's submission to be coerced or otherwise invalid for purposes of the Fourth Amendment"), *review filed* (Cal. Apr. 2, 2015).

In *Harris*, a sheriff's deputy arrested the defendant for DUI. The deputy told the defendant that, on the basis of the deputy's belief that the defendant was under the influence of a drug, the defendant was required to submit to a chemical blood test. *Harris*, 184 Cal. Rptr. 3d at 204; *see* Cal. Veh. Code § 23612.[1] The deputy advised the defendant that he did not have the right to talk to a lawyer when deciding whether to submit to the chemical test, that refusal to submit to the test would result in the suspension of his driver's license, and that refusal could be used against him in court. *Harris*, 184 Cal. Rptr. 3d at 204. The defendant responded, "Okay," and did not appear at any time to be unwilling to provide a blood sample. *Id.* After being

---

[1] California's implied-consent statute provides that "[a] person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for [DUI]." Cal. Veh. Code § 23612(a)(1)(A). "The person shall be told that his or her failure to submit to, or the failure to complete, the required chemical testing will result in a fine, mandatory imprisonment if the person is convicted of [DUI]," and either suspension or revocation of the person's driving privilege. *Id.* § 23612(a)(1)(D); *see id.* § 13353. "If the person is lawfully arrested for driving under the influence of an alcoholic beverage, the person has the choice of whether the test shall be of his or her blood or breath and the officer shall advise the person that he or she has that choice." *Id.* § 23612(a)(2)(A). "If the person arrested either is incapable, or states that he or she is incapable, of completing the chosen test, the person shall submit to the remaining test." *Id.*

transported to the sheriff's station, a blood draw was obtained from the defendant, who did not resist or otherwise refuse the blood draw. *Id.* The deputy twice told the defendant that he was required to submit to the blood test, and the deputy did not attempt to obtain a warrant before the blood test was conducted. *Id.* Among the defendant's arguments before the California Court of Appeal was that submission to a chemical test under the state's implied-consent law did not constitute valid consent for purposes of the Fourth Amendment because "a driver's submission to a blood draw, given only after admonition by the police pursuant to California's implied consent law, can never (or almost never) be considered valid consent under the Fourth Amendment because submission is extracted under the threat of serious consequences for refusal." *Id.* at 207, 210.

The court in *Harris* noted that "the concept of 'implied consent' in this context is confusing and somewhat unhelpful in determining whether a motorist['s] voluntary submission to a chemical test constitutes valid Fourth Amendment consent." *Id.* at 210. The court explained that "actual consent to a blood draw is not 'implied consent,' but rather a possible result of requiring the driver to choose whether to consent under the implied consent law." *Id.* (quoting *State v. Padley*, 849 N.W.2d 867, 876 (Wis. Ct. App.), *review denied*, 855 N.W.2d 695 (Wis. 2014)). The "implied consent law is explicitly designed to allow the driver, and not the police officer, to make the choice as to whether the driver will give or decline to give *actual* consent to a blood draw when put to the choice between consent or automatic sanctions." *Id.* (quoting *Padley*, 849 N.W.2d at 879). "Framed in the terms of 'implied consent,' choosing the 'yes' option affirms the driver's implied consent and constitutes actual consent for the blood draw. Choosing the 'no' option acts to withdraw the driver's implied consent and establishes that the driver does not give actual consent." *Id.* (quoting same). The court in *Harris* ultimately held

that "a motorist's submission to a chemical test, if freely and voluntarily given, is actual consent under the Fourth Amendment." *Id.* at 212-13. "That the motorist is forced to choose between submitting to the chemical test and facing serious consequences for refusing to submit, pursuant to the implied consent law, does not in itself render the motorist's submission to be coerced or otherwise invalid for purposes of the Fourth Amendment." *Id.* at 213. "The fact that a motorist is told he will face serious consequences if he refuses to submit to a blood test does not, in itself, mean that his submission was coerced." *Id.* at 211. Because the defendant verbally agreed to a blood test after being admonished by the deputy under the implied-consent law and because the defendant did not verbally refuse to give a blood sample or demonstrate a desire to withdraw his consent either verbally or physically, the court found that, under the totality of the circumstances, the defendant freely and voluntarily consented to the warrantless blood draw. *Id.* at 213-15.

In so holding, the California Court of Appeal in *Harris* relied on the Supreme Court of Oregon's opinion in *Moore* and the Supreme Court of Minnesota's opinion in *Brooks*. *Id.* at 211-13. In *Moore*, an Oregon defendant was charged with criminally negligent homicide after allegedly driving under the influence of intoxicants and striking another vehicle, killing one of its occupants. *Moore*, 318 P.3d at 1133. While investigating the crime, a police officer read the defendant Oregon's implied-consent warnings, and the defendant agreed to provide blood and urine samples. *Id.* at 1133-34. One of the warnings advised the defendant that, if a person refused or failed a chemical test, "evidence of the refusal or failure may also be offered against the person." *Id.* at 1136 (quoting Or. Rev. Stat. § 813.130(2)(a)). Before trial, the defendant moved to suppress the test results from those samples, arguing that his consent was involuntary because it was obtained after he had been warned of the legal consequences he would suffer if he

refused consent. *Id.* at 1134. The trial court concluded that the defendant's consent was involuntary, and the state court of appeals affirmed. *Id.*

The Supreme Court of Oregon reversed and remanded, however, because it concluded that the police officer did not unconstitutionally coerce the defendant's consent to chemical testing by reading him Oregon's statutory implied-consent warnings. *Id.* According to the defendant, Oregon's implied-consent warnings included at least one unconstitutional consequence of refusal because an Oregon driver has the right to refuse consent to a seizure of his bodily fluids under that state's constitution. *Id.* at 1138. The defendant asserted that being warned under the state statute that evidence of a driver's refusal or failure may be offered against him if he refused or failed a chemical test rendered the defendant's consent to the seizure of his blood and urine involuntary. *Id.* at 1139. The court found that the advisement that evidence of refusal or failure "may also be offered against" the defendant was true and not coercive, however. *Id.* at 1140. The court in *Moore* noted that "not all coercion inducing consent to a search is constitutionally impermissible. If the officers threaten only to do what the law permits them to do, the coercion that the threat may produce is not constitutionally objectionable." *Id.* at 1137 (quoting *State v. Hirsch*, 518 P.2d 649, 654 (Or. 1974)). Because the court in *Moore* found that the advice of rights and consequences that the police officer read to the defendant contained accurate statements of the lawful consequences of refusing to submit to the tests, the defendant's consent to provide blood and urine samples for testing was voluntary. *Id.* at 1140.

The defendant in *Brooks*, who was charged with multiple counts of driving while impaired, sought to suppress results of blood and urine tests taken by the police without a warrant because he agreed to chemical testing only after the police told him that refusal to submit

to the testing was a crime. *Brooks*, 838 N.W.2d at 568.[2] The defendant maintained that his consent was illegally coerced because police advised him that it was a crime to refuse the chemical tests. *Id.* at 570. The court in *Brooks*, however, determined that a driver's decision to take a chemical test is not coerced simply because the state imposes criminal penalties for refusing to comply, relying on its precedent and the Supreme Court's opinion in *Neville*, 459 U.S. at 564, 103 S. Ct. at 922-23 (holding that a driver is not coerced into testifying against himself in violation of the Fifth Amendment when the state introduces into evidence his refusal to submit to chemical tests in a criminal trial for DUI). *Id.*; *accord State v. Birchfield*, 858 N.W.2d 302, 306 (N.D. 2015) ("[C]onsent to a chemical test is not coerced and is not rendered involuntary merely by a law enforcement officer's reading of the implied consent advisory that accurately informs the arrestee of the consequences for refusal, including the administrative and criminal penalties, and presents the arrestee with a choice."). The court in *Brooks* held that the defendant consented on the basis of the totality of the circumstances in that case rather than by way of Minnesota's implied-consent statute. *Brooks*, 838 N.W.2d at 572-73; *accord Beylund*, 859 N.W.2d at 408-09 (concluding that defendant voluntarily consented to blood test, despite North Dakota's implied-consent statute criminalizing test refusal, because driver's decision to

---

[2] Minnesota's implied-consent law provides that anyone who drives a motor vehicle in the state consents "to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol" when certain conditions are met. *Brooks*, 838 N.W.2d at 569 (quoting Minn. Stat. § 169A.51, subdiv. 1(a) (2012)). The implied-consent law also requires that police inform drivers that Minnesota law requires them to take a test to determine if they are under the influence of alcohol, that they have the right to consult with an attorney to the extent that doing so does not unreasonably delay administration of the test, and that refusal to take a test is a crime. *Id.* (citing Minn. Stat. § 169A.51, subdiv. 2 (2012)); *see* Minn. Stat. § 169A.20, subdiv. 2 (criminalizing test refusal). If a DUI suspect does not agree to take a test, however, then the police may not administer one. *Brooks*, 838 N.W.2d at 569 (citing Minn. Stat. § 169A.52, subdiv. 1 (2012)).

agree to take chemical test is not coerced simply because administrative and criminal penalties attach to refusing test).

Thus, in light of the foregoing, Defendant's reliance on *State v. Butler*, 302 P.3d 609 (Ariz. 2013), is unavailing. In *Butler*, the Supreme Court of Arizona held that a compelled blood draw, even when administered pursuant to Arizona's implied-consent statute, is a search subject to the Fourth Amendment's constraints. *Butler*, 302 P.3d at 612 (citing *McNeely*, 133 S. Ct. at 1556). Accordingly, the Fourth Amendment requires an arrestee's consent to be voluntary to justify a warrantless blood draw. *Id.* The court in *Butler* considered the totality of the circumstances in that case, including the suspect's age and intelligence and the length of detention, before affirming the lower court's determination that the defendant's consent was involuntary. *Id.* at 613-14.[3] *Butler* does not hold, however, that Arizona's implied-consent statute is *per se* unduly coercive. *See Bales v. Dupnik*, No. CV 12-00483-TUC-BPV, 2014 WL 1794277, at *8 (D. Ariz. May 6, 2014) ("Petitioner points to no clearly established Supreme Court precedent which holds that the threat exerted by Arizona's or any other state's, implied consent law is *per se* unduly coercive."), *appeal filed*, No. 14-16067 (9th Cir. June 2, 2014). Defendant's argument that, under *Butler*, advising him of the implied-consent law rendered his consent involuntary is thus without merit.

After considering the totality of the circumstances in this case, the Court finds that Defendant voluntarily consented to the breath test. Officer Barner told Defendant that it would

---

[3] The court noted that it had previously held, in a case preceding *McNeely*, that the "consent" in Arizona's implied-consent statute does not always authorize warrantless testing of arrestees. *Butler*, 302 P.3d at 613 (citing *Carrillo v. Houser*, 232 P.3d 1245, 1247 (Ariz. 2010)). "Rather, the officer is directed to ask the arrestee to submit to the test, and the arrestee may then refuse by declining to expressly agree to take the test." *Id.* (citing Ariz. Rev. Stat. § 28-1321(B); *Carrillo*, 232 P.3d at 1247). "If the arrestee refuses, the statute specifies that a warrant is required to administer the test and the arrestee shall have his license suspended." *Id.* (citing Ariz. Rev. Stat. § 28-1321(D); *Carrillo*, 232 P.3d at 1247).

be illegal not to take the chemical test and that there would be ramifications for failing to do so. There is no evidence that Officer Barner did not accurately advise Defendant about the potential legal consequences of refusing to submit to a breath test. Officer Barner instructed Defendant to read Form 21C and directed him to check one of the boxes and sign the form. After reading the form, Defendant checked the box marked "I Will Submit To Testing," signed the form, and submitted to the breath test. Because the Court finds that Defendant expressly and voluntarily consented to the breath test, the Court need not reach Defendant's argument that any implied consent given was not sufficient under the Fourth Amendment. *See Butler*, 302 P.3d at 613-14 (analyzing juvenile defendant's consent under totality of circumstances rather than under Arizona's implied-consent statute); *Harris*, 184 Cal. Rptr. 3d at 210-15 (concluding that defendant freely and voluntarily consented to blood draw, rather than determining whether implied consent to chemical test satisfies Fourth Amendment); *Brooks*, 838 N.W.2d at 572-73 (holding that defendant consented to warrantless searches of his blood and urine under totality of circumstances, rather than under Minnesota's implied-consent statute). As for the other possible exceptions to the warrant requirement, the Court agrees with Defendant that exigent circumstances do not exist in this case, but that issue is moot in light of the Court's holding. Further, the Court need not address whether the breath test in this case is a search incident to an arrest, but notes that at least one court has held that a warrantless search of a defendant's breath is permissible as a search incident to arrest. *State v. Bernard*, 859 N.W.2d 762, 765-72 (Minn. 2015).

Even if Defendant could establish that his consent to take the breath test was obtained as a result of undue coercion, he cannot establish actual harm. The logical extension of Defendant's argument is that, but for the coercion, he would not have consented to the breath

test.  If Defendant did not consent, however, Officer Barner simply would have obtained a

warrant for a blood test pursuant to established protocol.[4]  Either way, the Government would

obtain evidence of Defendant's blood alcohol content.  *See Humphries v. State*, 759 S.E.2d 611,

613-14 (Ga. Ct. App. 2014) (concluding that police officer's statements to defendant that

chemical tests were "not optional" under state's implied-consent law were not coercive so as to

require suppression of breath test results because none of officer's statements to defendant,

including that police would obtain warrant to retrieve defendant's blood if defendant refused to

consent to breath test, was deceptively misleading or inaccurate); *State v. LeClercq*, 243 P.3d

1093, 1099 (Idaho Ct. App. 2010) (holding that officer's statement informing driver of intention

to obtain blood draw if driver refused breath test did not render driver's implied consent

involuntary; "[w]here an officer informs a suspect that the officer intends to do something that

the officer is legally authorized to do under the circumstances, such conduct does not amount to

coercion").[5]

     Defendant also maintains that laws criminalizing refusals to consent to warrantless

searches are unconstitutional, citing *Camara v. Municipal Court of City & County of San

Francisco*, 387 U.S. 523, 540, 87 S. Ct. 1727, 1736-37 (1967).  *Camara* involved a property

owner facing criminal charges for refusing to allow an inspection of his property.  There, the

---

[4] Following *McNeely*, the District of Maryland established a protocol for the USPP to obtain from a magistrate judge a telephonic warrant for a blood draw pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3).

[5] Unlike most searches, a breath test requires the cooperation of the subject in order to administer the test and accomplish its purpose.  Blood tests, fingernail scrapings, and buccal swabs of a subject's mouth can be effected whether or not the subject cooperates.  On the other hand, a breath test cannot be administered unless the subject cooperates by producing a sufficient breath sample.  *See McCracken v. State*, 685 P.2d 1275, 1280 (Alaska Ct. App. 1984) (Singleton, J., concurring); *State v. Chase*, 785 A.2d 702, 705 n.3 (Me. 2001).  Thus, obtaining a warrant for a breath test does not necessarily mean that the test will be accomplished.

Court held that administrative searches of private dwellings intrude upon the interests protected by the Fourth Amendment and, therefore, require a warrant. *Camara*, 387 U.S. at 534, 87 S. Ct. at 1733; *see Cowart v. Enrique*, 311 F. App'x 210, 213 (11th Cir. 2009) (per curiam). The property owner in *Camara* had the right to insist on a warrant because there was no probable cause to believe that the property owner had violated any law and because there were no exigent circumstances preventing the government from obtaining a warrant. *Camara*, 387 U.S. at 539, 87 S. Ct. at 1736. Defendant did not have such a right, as there was probable cause to believe that he had been driving under the influence of alcohol and he already had been arrested on that charge. *See Hoover v. Ohio*, 549 F. App'x 355, 356-57 (6th Cir. 2013) (per curiam) (dismissing habeas corpus petitioner's reliance on *Camara* in arguing that he may not be constitutionally convicted for refusing to consent to warrantless breathalyzer test); *Birchfield*, 858 N.W.2d at 308. Defendant's reliance on *Camara* thus is unavailing.

For these reasons, because Defendant expressly and voluntarily consented to the breath test, the Court finds that the warrantless breath test in this case did not violate the Fourth Amendment and **denies** Defendant's Motion.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Suppress Search and Seizure (ECF No. 14) is **DENIED**.

Date: May 6, 2015                                          /s/
                                          Thomas M. DiGirolamo
                                          United States Magistrate Judge

19